## SYER vs. GWIN.

*Twelfth District Court, for San Francisco Co., Nov. T.,* 1857.

CONTRACT—SLAVES—WAGES.

In the absence of any special facts arising from peculiar relations of the parties, or other circumstances, when valuable services are rendered and received, a jury would be authorized to *infer* a contract to pay.

Whether the law would absolutely imply such a contract, *quaere?*

*A.* brought slaves to a free state who continued to reside with him and did not demand wages. *Held,* that on these facts the inference was that the services were rendered without any understanding or expectation by either party that wages were to be paid, and under such circumstances the law does not imply an obligation to pay.

The court has passed upon all the facts in the opinion.

*McCabe,* for plaintiff:

*First.* Defendant and wife were manumitted by operation of law by being brought into this state voluntarily by the defendant. *Commonwealth* v. *Aves,* 18 *Pick.* 193 ; *Lee* v. *Lee,* 8 *Peters* 44 ; *Pregg* v. *Commonwealth,* 16 *Peters* 539 ; *Wenny* v. *Whiteside,* 1 *Missouri* 427 ; *Willie* v. *Smith,* 2 *Missouri* 36 ; *LeGrange* v. *Choteau,* 2 *Missouri* 20 ; *Inlix* v. *McKinney,* 3 *Missouri* 3 ; *Natt* v. *Ruddie,* 3 *Missouri* 400 ; *Ex parte Simmons,* 4 *Wash.* 396 ; *Respublica* v. *Blackmore,* 2 *Yeates* 234 ; *John* v. *Durnam,* 2 *Yeates* 449 ; *Jackson* v. *Mullock,* 12 *Cowen* 38 ; *Rankin* v. *Lydia,* 2 *A. R. Wash.* 467 ; *James Somersett's case,* 1 *Blackstone* ( *Chitty* ) 425, *n.* 3.

*Second.* Plaintiff is entitled to recover wages of himself and wife from the moment they became free. *Thompson* v. *Wilmot,* 1 *Bibb* ( *Kentucky* ) 422 ; *Reuben* v. *Parish,* 6 *Humphrey* 122 ; *Lewis* v. *Simonton,* 8 *Humphrey* 185 ; *Phillis* v. *Grutin,* 9 *Louis.* 208 ; *Matilda* v. *Crushaw,* 4 *Yerger,* 299.

*Third.* It is said that this case is analogous to that of a person who continues to work for his father after majority. *Freto* v. *Brown,* 4 *Mass.* 675 ; *Angel* v. *McLellan,* 16 *Mass.* 31 and n. 9 ; *Jacobson* v. *Ex'rs of Le Grange,* 3 *Johns,* 379 ; *Le Sage* v. *Cressmaker,* 1. *Esp.* 189.

*Fourth.* In regard to the point that we have alleged no promise—inasmuch as the law implies it, there is no necessity for our so doing. 1 *Whittaker's Pr.* 380, 1,2, 3, 404, 5 ; *Glenny* v. *Hitchkins,* 4 *How. Pr.* 98 ; *Gawey* v. *Fowler,* 4 *Saudf.* 665.

*Fifth.* If *A.* take the goods of *B.* and convert them, he is liable. *Comyn on Cont.* (*4th Am. from last Lond. Ed.*) 7 ; *Hill* v. *Davis,* 3 *N. Hamp.* 387. And by analogy the doctrine is applicable to the acceptance and appropriation of personal services.

*Sixth.* Had plaintiffs been white servants the law would have implied the promise. *Jackson* v. *Ex'rs of Le Grange,* 3 *Johns.* 200 ; *Comyn on Cont.* 4. Their being black, shall they not have the same rights ?

*Saunders & Hepburn,* for defendant :

The plaintiff, in order to recover, must make out a contract. It is admitted that there was no express contract,—he must then show an implied one. By a reference to the authorities it will be found that it is incumbent on the plaintiff to show *affirmatively* and by distinct proof that payment was contemplated. *Alfred* v. *Fitzjames,* 3 *Esp.* 3 ; *Condor's case,* 5 *Watts & Searg,* 513 ; *Fitch* v. *Peckham,* 16 *Vern.* 156 ; *Andrews* v. *Foster,* 17 *Vern.* 556 ; *Win* v. *Win,* 3 *B. Monroe,* 647. The four last cases are of the class of children working for their parents after growing of age. In *Condor's case,* there was a good deal of proof to show an understanding that the service was to be paid for. To the same effect, is *Arbuckle* v. *Barney,* 5 *Louis.* 700 ; *Eugenie* v. *Preval,* 2 *Louis.* 180, 620–1.

NORTON, J.—This action is brought to recover compensation for services rendered by the plaintiff and his wife as servants of the defendant.

The facts agreed upon are : that the plaintiff and his wife were the

slaves of the defendant in the state of Mississippi, and were brought by him to this state as such, and that they continued to live in his house here and rendered services as servants, the plaintiff for about eight months and his wife for about two years and eight months; that the defendant furnished the plaintiff and his wife with shelter and board, and that the defendant never made with the plaintiff or his wife any express contract or promise to pay wages for said services; and that the services of the plaintiff were worth $50 per month, and those of his wife $55 per month, provided the court shall be of opinion that the plaintiff is entitled to recover.

The complaint omits many averments which are usually made in actions of this nature. It does not aver any contract of hiring nor any promise to pay, or that the services were rendered upon request, or upon any understanding or expectation by either party that wages were to be paid. The question is, whether the law on these facts implies a promise or an obligation to pay wages.

The simple fact that one person renders and another receives valuable services, does not always create an obligation to pay for them. They may be gratuitous, or rendered in consideration of love and affection, or in the hope of receiving some favor, such as a legacy. In the absence of any special facts arising from peculiar relations of the parties, or other circumstances, where valuable services are rendered and received, a jury would be authorized to infer, and perhaps the law would absolutely imply, a contract to pay. But where such peculiar relations or other circumstances exist, a jury is authorized to infer the contrary, and the law does not always imply a promise or obligation to pay. If children continued, after arriving at their majority, to reside with, and render services to their parents, they are not absolutely entitled to recover wages, but will or will not be thus entitled, according as the circumstances of each case authorize the inference that the parties did or did not contemplate the payment of wages.

Upon these slaves being brought into this state they became immediately entitled to make a contract with their former master, as to the terms upon which they would serve him, or to seek service with other employers. Instead of this they continued to live with him voluntarily, as they had formerly done. During a period of two and a half years,

as to one, and eight months as to the other, they received their sustenance, and made no claim, so far as appears, for wages. If they and their former master should hereafter reside in the state of Mississippi, their former relation will revive with its reciprocal obligations on their part to render service, and on his to furnish support as well during the time those services are rendered, as after age or infirmity has rendered them incapable of rendering valuable services. From these facts, the only reasonable inference to be drawn, is, that these services are rendered without any understanding or expectation by either party, that wages were to be paid ; and under such circumstances the law does not imply an obligation to pay.

This exact point was decided in the same way in the case of *Alfred* **v.** *Fitzjames,* (3 *Esp.* 3,) and that case was cited as an authority for deciding the same way the case of *Livingston* v. *Ackeston* (5 *Cowen,* 531). There are many cases in the slaveholding states, where parties have been compelled to pay for the services of colored persons held as slaves, who were in fact, free ; but these are cases in which the services were rendered involuntarily, and were obtained by fraud or force.

There must be a judgment for the defendant.